Emanuel PUGGIONI, Plaintiff-Appellee,

v.

LUCKENBACH STEAMSHIP COMPANY, Inc., Defendant and Third-Party Plaintiff-Appellant,

v.

TURNER & BLANCHARD, INC., Third-Party Defendant-Appellee.

No. 124, Docket 26360.

United States Court of Appeals Second Circuit.

Argued Dec. 15, 1960.

Decided Jan. 26, 1961.

William M. Kimball, New York City (Burlingham, Hupper & Kennedy, Eugene Underwood, William S. Lynch, New York City on the brief), for defendant and third-party plaintiff-appellant.

John J. Robinson, New York City (Paul C. Matthews, Edwin M. Bourke, New York City, on the brief), for plaintiff-appellee.

Patrick E. Gibbons, New York City (Galli, Terhune, Gibbons & Mulvehill, New York City, on the brief), for the third-party defendant-appellee.

Before LUMBARD, Chief Judge, and MAGRUDER and MOORE, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Luckenbach Steamship Company, Inc. (Luckenbach), the ship owner, appeals from a judgment upon a jury verdict awarding damages to plaintiff, a longshoreman employed by Turner & Blanchard, Inc. (T & B), a stevedore. Luckenbach also appeals from the judgment of the court dismissing the third-party ac-

tion against T & B as a third-party defendant.

As in almost all of the appeals in these unseaworthy-negligence [1] cases, reversible error (if it exists) must be found in proof improperly admitted or excluded and/or in the instructions to the jury given or refused. The factual issues are usually more critical where as here the jury may have to choose between ship owner and stevedore as to liability and the court has to consider the question of stevedore indemnification.

Plaintiff (62 years of age) on October 2, 1957, was working on a Brooklyn pier as a "slingman" engaged in unloading cargo from the S. S. Robert Luckenbach. The cargo was being transferred from ship to pier on wooden platforms ("racks") which, after being attached to the ship's "falls," were raised and lowered by a winch. The device used to secure the movable racks to the cargo hook consisted of a bridle and two spreaders. There were, in effect, two triangles of wire at the base of each of which was a wooden bar. These bars when fitted into appropriate slots on each side of the rack firmly engaged it so that when the winch operated the fall, the rack was elevated or lowered in a horizontal position. The bars had to be placed in the slots manually and this was the task being performed by plaintiff and his partner, James Ciccone, at the time of the accident.

A pile of empty racks was on the pier. One or more racks were requisitioned to be sent down for cargo. Plaintiff attached the bar on his side of the rack pile; Ciccone on his side did likewise. Plaintiff turned and walked away but was immediately struck by a falling rack containing one or more protruding nails and was injured.

The factual issue centers around the question: what caused the rack or racks to fall? Plaintiff argues that he attached his bar to only one rack (the top rack), that Ciccone did the same, that protruding nails in the second rack underneath the top rack caused the second rack to adhere to the first rack and be momentarily lifted about ten feet before breaking away and falling on plaintiff. Luckenbach's version is that Ciccone by error, or because of misunderstanding the requisition, attached his bar to the next to the top rack so that the imbalance thereby created caused the racks to fall. Here was the vital issue, first, because if plaintiff's theory of the "unseaworthy" rack and proper attachment is sustained, liability would be established. On the other hand if Ciccone, a fellow longshoreman, attached his bar to the second rack, doubt might have been cast on the nail adherence explanation of the fall and also might have affected the ship owner's liability as well as liability of the stevedore to the ship owner.

The key witnesses were plaintiff, Iorrio, a hi-lo driver and eye witness, and Ciccone. On October 3, 1957, the day after the accident, Ciccone had given a witnessed statement in which he had said, "Just before the accident happened the gangway man Aniello at No. 1 hatch asked me to send two racks on to the ship. I placed the cross batten of the sling on my side into the end space of the lower rack. * * * Anyway the both racks began to lift up and when about 10 feet higher than stringpiece, both the racks dropped off the sling and one of them hit French [plaintiff] on the head and knocked him down."

On the trial, plaintiff testified that he hooked up one rack. Iorrio, observing the scene from where he was working, said, "They both hooked up one" and he "saw two going up." Ciccone, however, when called by Luckenbach said, "I hooked up two racks" and "everything come down." • "Q. They both came down? A. That's right. Q. Both of them? A. I think it was one."

Plaintiff did not see the racks fall; Iorrio was driving the hi-lo. Thus Ciccone was the only person participating in the operation who saw what happened.

---

1. The motion to dismiss the negligence cause of action was granted.

On May 22, 1958, over six months after the accident, Ciccone gave another witnessed statement, introduced as plaintiff's exhibit No. 5, wherein he said, "We had hooked up one rack and walked away from underneath then I noticed that one was caught underneath. This rack fell from about 10 or 15 feet in the air."

The frailties of observation and memory are well known. From this important witness came inconsistent statements and uncertain testimony. In his first statement (the day after the accident) he had hooked up two; six months later, one. On the trial, first he saw two fall, then one. The importance which the jury placed upon Ciccone's testimony appears from a request (Court Exhibit No. 4) made more than six hours after they had commenced their deliberations. "The jury would like to hear all of Jimmy Ciccone's testimony." This followed a previous request, "What did Jimmy Ciccone say with respect to the number of empty pallets he hooked up and what else did he say after being cross-examined on the point?" (Court Exhibit No. 3.)

■ Despite receiving the May, 1958, Ciccone statement (Exhibit No. 5) and despite many attempts of Luckenbach's counsel to introduce the October 3, 1957, statement, the trial court excluded it. Such exclusion of a vital inconsistent statement constitutes reversible error. Cross-examination from this statement might seriously have affected Ciccone's credibility in the minds of the jury. It is not clear whether exclusion was based on assumed lack of hostility, impeachment of one's own witness, or lack of inconsistency. Even assuming, however, the exclusion of this statement was not an abuse of discretion under federal decisional law (see United States v. Allied Stevedoring Corp., 2 Cir., 1957, 241 F.2d 925), the trial judge should have admitted the statement pursuant to Section 343-a of the New York Civil Practice Act, which is applicable by virtue of Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and which allows a party to impeach his own witness with a prior inconsistent statement when it is in writing and either subscribed or sworn to by the witness. On the record as a whole a sufficient foundation for its admission was laid. The Charles Morgan, 1885, 115 U.S. 69, 5 S.Ct. 1172, 29 L.Ed. 316; United States v. Dilliard, 2 Cir., 1938, 101 F.2d 829, certiorari denied 1939, 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1036.

■ The error was further compounded by another evidentiary ruling which diminished the likelihood that Luckenbach's view of the facts would be fairly considered by the jury. Considering the equivocal answers given by Iorrio regarding the nature of his crime· and the importance of his testimony, the court should have received the official record showing the precise crime of which he had been convicted for the purpose of attacking Iorrio's credibility.

Luckenbach also premises error upon the trial court's refusal to admit an accident report apparently made the day of the accident by an employee of T & B, the impleaded third-party defendant, which allegedly supports its theory that two racks fell. The report is admittedly hearsay, but Luckenbach contends that it is admissible under the Federal Business Records Act, 28 U.S.C. § 1732, since it was made in the regular course of business.

■■ Because hearsay may often be useful in attempting to discover which version of the facts in litigation approximates the truth, there are numerous statutory and common law exceptions to the hearsay rule. Most of the exceptions have in common the fact that the extra judicial statements falling within the exception are not attended by all the risks as to reliability embodied in most hearsay. The statute provides that lack of personal knowledge on the part of the entrant of the events reported affects only the weight and not the admissibility of the evidence. See Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1950, 183 F.2d 467, 473; cf. Landgraf v. United States, D.C.Pa., 1947, 75 F.Supp.

58. Accident reports, however, are frequently not reliable because often such evidence is "dripping with motivations to misrepresent." Hoffman v. Palmer, 2 Cir., 1942, 129 F.2d 976, 991, affirmed 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L. Ed. 645. In line with the considerations regarding the use of hearsay in evidence, the Supreme Court held in Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, that an accident report prepared and offered by the party sought to be held liable was not admissible under the Federal Business Records Act although it might appear to satisfy its literal requirements. The Court said as to such reports, "Their primary utility is in litigating, not in * * * [conducting] the business as a business." 318 U.S. at pages 114–115, 63 S.Ct. at page 481. Although accident reports should not be admitted when the party making the report offers it for the purpose of its own exoneration from liability (Palmer v. Hoffman, supra; see Gilbert v. Gulf Oil Corp., 4 Cir., 1949, 175 F.2d 705, 710; N. L. R. B. v. Sharples Chemicals, Inc., 6 Cir., 1954, 209 F.2d 645, 654; cf. Massachusetts Bonding & Ins. Co. v. Norwich Pharmacal Co., 2 Cir., 1927, 18 F.2d 934, 937), this circuit has construed Palmer v. Hoffman to give trial judges discretion to determine whether the circumstances surrounding accident reports made by others justify their acceptance in evidence. Compare Pekelis v. Transcontinental and Western Air, Inc., 2 Cir., 1951, 187 F.2d 122, 129–130, 23 A.L.R.2d 1349, with Central Railroad Co. of N. J. v. Jules S. Sottnek Co., 2 Cir., 1958, 258 F.2d 85, 87–88. The Federal Business Records Act should not be interpreted in a "dryly technical" way which would "reduce sharply its * * * usefulness." Korte v. New York, N. H. & Hartford R. Co., 2 Cir., 1951, 191 F.2d 86, 91. Because this case will have to be retried, we do not determine the admissibility of the T & B report but deem that this question should be passed on by the trial judge in the light of his view of the facts surrounding the making of the report.

Because of the necessity of a new trial, brief comment on the other errors assigned must be made. Luckenbach's counsel submitted 88 requests to charge. Even assuming that each paragraph represents a legal generality applicable to the case, there was no error in the trial court's approach in ruling "denied except as charged." A trial judge is not required to write out his charge in advance and submit it to counsel for their editing and exceptions. See Downie v. Powers, 10 Cir., 1951, 193 F.2d 760, 767; Levin v. Joseph E. Seagram & Sons, 7 Cir., 1946, 158 F.2d 55, 57–58. Nor is he required to incorporate every proposition of law suggested in counsel's requests provided he covers the specific principles necessary for the jury's guidance. See Halecki v. United New York & New Jersey, 2 Cir., 1960, 282 F.2d 137, 140, certiorari denied, 1961, 81 S.Ct. 459, 81 S.Ct. 461.

The substance of most of the requests was charged. However, there were a few exceptions in the field of damages. The court merely informed the jury that plaintiff "was 62 years old at the time of the happening of the accident and had a life expectancy of approximately 14 years" and said that the jury must consider this life expectancy, physical condition and type of employment in assessing damages. Although prior to the court's charge, Luckenbach's requests 47, 48, 49 and 50 were withdrawn, after the charge Luckenbach's counsel specifically asked that these requests be given. This request was denied. The substance of these paragraphs dealt with mitigation of damages, the discount factor in a lump sum payment, and working life expectancy in contrast to theoretical or mortality tables life expectancy. The jury should have received instructions for their guidance in these fields.

Because the factual issues upon any retrial may affect the third-party claim, the judgment against Luckenbach in favor of T & B must also be reversed.

Reversed.