Frank DRAGO, Plaintiff-Appellee,

v.

A/S INGER, Defendant and Third-Party Plaintiff-Appellee,

v.

DANIELS & KENNEDY, INC., Third-Party Defendant-Appellant,

and

Illinois Atlantic Corp., Third-Party Defendant-Appellee.

No. 247, Docket 27231.

United States Court of Appeals Second Circuit.

Argued March 5, 1962.

Decided July 3, 1962.

William A. Wilson, New York City (Warner Pyne and Pyne, Smith & Wilson, New York City, on the brief), for defendant and third-party plaintiff-appellee.

Raymond C. Green, New York City (Charles G. Tierney, Harry Schechter and Harold Klein, New York City, on the brief), for third-party defendant-appellant.

David P. H. Watson, New York City (J. Ward O'Neill and Haight, Gardner, Poor & Havens, New York City, on the brief), for third-party defendant-appellee.

Before LUMBARD, Chief Judge, and KAUFMAN and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge.

This is an appeal from a judgment of indemnity awarded the third-party plaintiff shipowner, which had been found liable to the plaintiff longshoreman for his personal injuries, against the stevedoring company which employed the plaintiff in its unloading operations on the third-party plaintiff's ship. The stevedoring company contends on this appeal that the trial judge, in deciding on the third-party complaint without the jury pursuant to stipulation, erred in holding it liable because of its use of the defective winch which injured the plaintiff, and further contends that any implied duty of indemnity to the shipowner was precluded by inconsistent express language in the stevedoring contract and by the shipowner's negligence in supplying the winch in defective condition. We find these contentions to be without merit, and in addition reject, without further discussion, certain insubstantial attacks which the stevedoring company

makes on the basic judgment in favor of the longshoreman against the shipowner.

On January 4, 1956, the S. S. Elin Hope arrived at a pier at the foot of Dikeman Street in Brooklyn, N. Y. carrying a cargo of newsprint from Quebec consigned to News Syndicate, Inc. The ship was owned by A/S Inger, and operated by it under a time charter agreement with Illinois Atlantic Corp. At 8 a. m., shortly after the ship docked, gangs of longshoremen employed by Daniels & Kennedy, Inc., came aboard to unload the cargo. The plaintiff, Frank Drago, was the starboard winchman on the gang working at # 2 hatch. Apparently the unloading proceeded without incident until 12 noon, when Drago shut off the steam at his winch and went to lunch. When he returned from lunch at 1:00 p. m., Drago again opened his steam valve, but shortly thereafter was told to shut down his winch until the gang working at # 1 hatch caught up with his gang. While Drago was attempting to close the steam valve, he in some way fell on the operating handle, with the result that his left foot was crushed by the moving piston.

This diversity action was brought by Drago against the shipowner, A/S Inger, based upon theories of unseaworthiness and negligence. The shipowner impleaded the stevedoring company, Daniels & Kennedy, Inc. and the time charterer, Illinois Atlantic Corp., claiming indemnity from each, and each of the third-party defendants also cross-claimed against the other. The jury entered a verdict of $4,500 for the plaintiff against the shipowner, and in answer to special interrogatories stated that the ship had not been unseaworthy but the shipowner had been negligent and that their award had been reduced by 75 per cent because of contributory negligence. The court then considered the indemnity claim and the cross-claims, dismissing the cross-claims and the indemnity claim against the time charterer and granting the indemnity claim of the shipowner against the stevedoring company. Although various notices of appeal were filed, the only

appeals pursued here are those by the stevedoring company from the judgment against the defendant and the third-party judgment against itself. Since the appeal from the judgment against the defendant presents, as we have noted, no substantial issues, we are here concerned only with the stevedoring company's attacks on the court's award of indemnity to the shipowner.

In making the findings of fact necessary for the determination of the third-party claim, the trial judge properly interpreted the jury's verdict and answers to the special interrogatories so as to prevent inconsistency between the verdict and his disposition of the indemnity claim. On review of the record, we see no reason to regard his findings as "clearly erroneous." The judge found that

"[T]he jury accepted the defendant's theory of the accident, i. e. that when the plaintiff was told to close off his steam he stood up on the piston rod and leaned over the operating handle in order to reach the steam valve on the opposite side of the winch; that proper procedure and due care called for the plaintiff to walk around his winch, in order to reach the shut-off valve; that in leaning over the winch plaintiff lost his balance, slipped, depressed the operating handle with his body as he fell, and thereby activated the piston which crushed his toes because he had placed his foot on the piston rod in the first place. Implicit in the jury's finding of negligence on the part of the shipowner is a finding that the shipowner did not provide a safety pin which, if provided and used, would have avoided the accident."

The judge found that the missing pin would, if inserted in the proper place, have locked the operating lever in a neutral position, and thus have prevented the activation of the piston. He concluded that "the shipowner's negligence lay in not correcting a dangerous condi-

tion that it reasonably should have discovered."

On the third-party claim, the judge decided that the stevedoring company must indemnify the shipowner because of its continued use of the winch without having the pin replaced. He held this to be a breach of its contractual "duty to remedy, or have the ship's crew remedy, a dangerous condition that exists for a period sufficient for the stevedore to have constructive notice thereof." He went on to make the findings of fact underlying this conclusion:

"The missing pin was a condition which existed, not for a few minutes, but from the time the longshoremen came aboard at about 8:00 A. M. to about 1:15 P.M. when the plaintiff was injured. Thus the stevedore had constructive notice of the dangerous condition and its failure to correct it or have it corrected was negligence and a breach of its warranty of workmanlike service in that liability of the shipowner was a reasonably foreseeable consequence."

■ In attacking the judgment against it, the appellant argues that the trial judge erred in deciding that under the contractual situation existing in this case a warranty of workmanlike service ran from it to the shipowner. The contract under which the stevedores worked was made not with the shipowner but with the consignee of the cargo, News Syndicate, Inc. Although the shipowner was thus not a party to the contract, the trial judge held that it enjoyed the normal warranty of workmanlike service as third-party beneficiary under the clause stating that "the Contractor will provide all necessary labor and services to discharge, unload and handle paper from ships or barges *in a prompt and efficient manner*." [Emphasis added.] We agree that such a clause creates such a warranty, Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 565, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), and that the warranty runs to the shipowner as third-party beneficiary, Waterman S. S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); cf. Crumady v. The J. H. Fisser, 358 U.S. 423, 428–429, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). Nor can there be any question, under the law laid down by the Supreme Court, that the warranty extends to the proper use of such equipment as winches. Crumady v. The J. H. Fisser, supra.

■ The appellants argue, however, that any such implied-in-fact warranty as would normally run in favor of the shipowner as third-party beneficiary is excluded by the presence in the contract of an express indemnity clause which does not mention the shipowner, but rather benefits only "The News and its subsidiary and affiliated companies as well as any other persons and companies for which The News may be handling paper." We do not agree. No further discussion is needed than the citation of our treatment of the same problem in our recent decision in Pettus v. Grace Line, Inc., 305 F.2d 151 (2 Cir. 1962), where we held that in the absence of some express disavowal the normal implication of warranty from the terms of the contract is not contradicted.

■ As we have noted, we see no reason to reject the trial court's findings as to the underlying evidentiary facts relevant to the indemnity claim. We also accept his conclusion that the conduct of the stevedoring company in permitting the defective winch to be used for more than four working hours without making any effort to have it repaired fell short of that "workmanlike service" that it warranted to the shipowner. Since we accept the determination that the company was on notice of the absence of the pin, and had a duty to have it replaced, we may avoid, as did the trial judge, considering whether the plaintiff's own negligence might be imputed to his employer as a basis for indemnity. It still remains, however, to consider the contention of the appellant that indemnity is barred by the fact that the deficiency which caused the injury was itself the product of the negligence of the ship-

owner in not properly repairing the ship's equipment.

The mere fact that the shipowner was at fault is obviously not in itself a bar to indemnity; the unworkmanlike service of the stevedoring company was responsible for bringing the defect into play and causing the injury, and this is normally sufficient basis for recovery over. Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); American Export Lines, Inc. v. Revel, 266 F.2d 82, 87 (4 Cir. 1959). Appellant argues, however, that the shipowner violated a contractual duty to the stevedores to supply them with proper winches. We need not complicate matters by investigating the consequences of the fact that there was no direct contractual relationship between the shipowner and the stevedoring company here; rather we shall assume that the stevedoring company was a third-party beneficiary of the shipowner's undertaking in the time charter to "keep the vessel in a thoroughly efficient state in hull, machinery and equipment" and can take advantage of the contractual defenses normally available to a stevedore who has contracted directly with the shipowner. Even if this assumption is made, we reject the appellant's contractual defenses. As we have recently held in Pettus v. Grace Line, Inc., supra, a shipowner's breach of contract in failing to supply adequate equipment to its stevedores is not sufficiently material to excuse the stevedores from the contractual duty to give proper service on which the indemnity claim is here based. The cases cited to us by the appellant dealing with the warranties of professional suppliers of equipment, e. g., Booth S. S. Co. v. Meier & Oelhaf Co., 262 F.2d 310 (2 Cir. 1958), are wholly irrelevant to the question of the obligations of shipowners making equipment available to stevedores. We find in the record before us no additional circumstances which could possibly constitute "conduct on [the shipowner's] * * * part sufficient to preclude recovery," Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 441, 2 L.Ed.2d 491 (1958), and the appellant has suggested none.

There is no substance in the appeal by Daniels & Kennedy, Inc., from the dismissal of its cross-claim against Illinois Atlantic Corp.

Affirmed.