John ORLANDO, Libelant,

v.

PRUDENTIAL STEAMSHIP CORPORA-TION, Respondent-Appellant,

v.

AMERICAN STEVEDORES, INC., Respondent-Impleaded, Appellee.

No. 168, Docket 27717.

United States Court of Appeals Second Circuit.

Argued Dec. 7, 1962.

Decided Feb. 5, 1963.

John J. Purcell, New York City (Stapleton, Flynn & Lilly and Robert G. Farrell, New York City, on the brief), for respondent-appellant.

Michael J. Kenny, George J. Conway, New York City, for respondent-impleaded, appellee.

Before SWAN, FRIENDLY and MARSHALL, Circuit Judges.

SWAN, Circuit Judge.

Orlando, a marine carpenter in the employ of American Stevedores, sustained injuries from falling on the deck of

respondent's vessel when he boarded the vessel to commence work. His fall was caused by slipping on loose kernels of grain on the deck.[1] Judge Palmieri held that the presence of the grain created an unseaworthy condition which was the proximate cause of the accident. In an opinion not officially reported he awarded libelant a recovery of $5,250 against the shipowner, and dismissed the latter's petition against the impleaded respondent for indemnity. The decree in favor of libelant has been satisfied. The shipowner's appeal questions only the dismissal of its claim for indemnity.

There being no express indemnity agreement, the appellant's claim rests on the implied warranty of workmanlike service by the stevedoring company. This principle was first announced by the Supreme Court in Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 133, 76 S.Ct. 232, 100 L.Ed. 133. It has been frequently discussed and applied to various fact situations in later cases. See Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 428, 79 S.Ct. 445, 3 L.Ed.2d 413; Waterman Steamship Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169; Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798; DeGioia v. United States Lines Co., 2 Cir., 304 F.2d 421, and cases therein cited; Williams v. Pennsylvania R. R., 2 Cir. 313 F.2d 203.

In the present case the appellant contends that American should be held to have broken its implied warranty of workmanlike service on either of two theories. The more far reaching, and the one to be first discussed, is the claim that a stevedore is required to inspect a vessel before sending its men aboard to commence work.

■ At 11:40 a. m. on the day of Orlando's accident, the vessel was docked with her starboard side to Pier 3, Brooklyn Army Base. Cargo was to be loaded in hatches 1, 3 and 4 pursuant to American's contract with the Transportation Corps of the United States Army. Judge Palmieri found that the unseaworthy condition which caused Orlando's injury had existed for an hour and twenty minutes before any employee of the stevedoring company boarded the vessel; moreover, he found that during that period the company had access to the ship and could have discovered the unseaworthy condition if it had inspected the working area. However, after a scholarly review of the authorities, the Judge concluded that no case had imposed the duty of inspection before beginning operations. We agree with this conclusion.

Appellant relies particularly on Hugev v. Dampskisaktieselskabet International, S.D.Cal., 170 F.Supp. 601, 608, aff'd sub nom. Metropolitan Stevedore Co. v. Dampskisaktieselskabet International, 9 Cir., 274 F.2d 874, cert. denied 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147. That case involved a situation in which a dangerous condition was discovered by the stevedore's employees as their operations proceeded, not by prior inspection. Thus it is not authority for the appellant's contention. Calderola v. The Cunard Steamship Co., Ltd., 2 Cir., 279 F.2d 475, cert. denied 364 U.S. 884, 81 S.Ct. 172, 5 L.Ed.2d 104, is distinguishable for the same reason. And in Drago v. A/S Inger (E.D.N.Y.) 194 F.Supp. 398, 404–405, aff'd 2 Cir., 305 F.2d 139, the court did not imply a duty of prior inspection, but held that a stevedore chargeable with constructive notice of a dangerous condition through the knowledge of its employees has a duty to remedy the condition, or to have it remedied. Nor does our reading of Crumady v. The Joachim Hendrik Fisser, supra, and Calmar S. S. Corp. v. Nacirema Operating Co., 4 Cir., 266 F.2d 79, cert. denied 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 62, elicit from those cases any duty of inspection prior

[1]. Prior to arriving at the port of New York the vessel had loaded grain at Norfolk, Virginia. American Stevedores had nothing to do with this operation.

to the stevedore's sending aboard a gang of longshoremen. Since no decision has recognized such a duty, and since there was no evidence as to the existence of a custom or practice to that effect, we see no reason to impose such a duty in this case. Cf. The T. J. Hooper, 2 Cir., 60 F.2d 737, cert. denied 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571.

Appellant's alternative theory is that the stevedore broke its implied warranty of workmanlike service by failing to correct an unseaworthy condition of which it had notice. Judge Palmieri found that the sole means of ingress to the vessel was by a forty-foot gangway running from the deck to the ship's bulwark, and that a step or "brow" ladder positioned between Nos. 4 and 5 hatches ran from the gangway to the main deck. He found that the gangway and brow ladder were safe and secure. There was also a finding that the libelant, in the company of a co-worker, boarded the ship at about 1:05 p. m. on the day of the accident, and that in proceeding to a fuse box to obtain current for the electric saw which he was carrying, libelant turned slightly to the left on reaching the deck, whereas the longshoremen who had preceded him had turned to the right in order to reach their assigned hatches. Finally, the District Judge found that libelant, upon reaching that portion of the deck not traversed by his fellow workers, slipped on grain and fell, receiving the injury for which he sued.[2] None of these findings is clearly erroneous.

On these findings, the question is whether the stevedore can be charged with notice of the existence of the unseaworthy condition, and thus held to have broken its warranty by failing to act to correct it. Where a stevedore's employees took notice of a dangerous condition five hours and fifteen minutes before it caused plaintiff's accident, and had done nothing to rectify it, the stevedore was found to have had constructive notice and was held liable over to shipowner, see Drago v. A/S Inger, supra,

194 F.Supp. at 405. However, the fact that libelant fell in an area not generally traversed by his fellow workers prevents our charging American with their "knowledge" of the condition. Orlando testified that he saw the grain when he "reached the top of the first long gangway." It may be assumed that Orlando's knowledge of the danger can be imputed to his employer, but we held in Calderola v. The Cunard Steamship Co., Ltd., supra, 279 F.2d at 478, that knowledge acquired by the stevedore only a few moments before an accident did not create liability on the part of the stevedoring company since the latter had no adequate opportunity to correct the dangerous condition or require the ship to do so. Thus American was under no duty to correct the condition, and did not break its warranty by failing to do so.

Affirmed.

---

2. See Findings of Fact 3, 4, 5, 7, 8 and 9.