Dominick **VACCARO**, Plaintiff-Appellee,

v.

**ALCOA STEAMSHIP COMPANY, Inc.,**
**Defendant and Third-Party Plaintiff-**
**Appellant,**

**AMERICAN STEVEDORES, INC., and**
**Anderson-Linton Lumber Co., Inc.,**
**Third-Party Defendants-Appellees.**

No. 12, Docket 31692.

United States Court of Appeals
Second Circuit.

Argued Sept. 16, 1968.

Decided Dec. 27, 1968.

Donald S. Sherwood, Joseph Kelner, New York City, for plaintiff-appellee.

J. Ward O'Neill, John J. Quigley, Jr., Stephen S. Gerard, Haight, Gardner, Poor & Havens, New York City, for defendant and third-party plaintiff-appellant.

John F. X. McKiernan, Daniel J. Coughlin, New York City, for third-party defendants-appellees.

Before LUMBARD, Chief Judge and WATERMAN and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

In this action plaintiff, alleging that the shipowner was negligent and that its vessel was unseaworthy, seeks to recover damages for an elbow injury the plaintiff sustained while working aboard the *Alcoa Puritan* owned by the defendant. Plaintiff is a marine carpenter foreman employed by American Stevedores, Inc. which had a contract to load cargo and to do carpentry work aboard the *Alcoa Puritan* while berthed at the Brooklyn Army Terminal.

The plaintiff slipped and fell when he tried to descend from a stow of oil drums onto a deck approximately three feet below him by stepping onto an elevated bench which was situated midway between the stow and the deck and which the plaintiff believed was securely fastened. The bench gave way. No catwalk, ladder, stairs or other device for egress from the stow was available.

Judge Cooper of the United States District Court for the Southern District of New York, sitting without a jury, accepted plaintiff's version of how the accident occurred, rejected defendant's contention that plaintiff had been contributorily negligent, and found that the shipowner's failure to provide a safe means of egress from the stow made the ship unseaworthy. Plaintiff was awarded a judgment of $15,000 for pain and suffering and $132 for medical expenses. Third-party claims by Alcoa against American Stevedores, alleging that American was responsible for placing the bench in position near the stow and should have known that, when so placed, the bench created an unsafe condition, and against Anderson Linton Co., a carpentry contractor on the *Alcoa Puritan*, alleging breach of warranty of contract to construct a catwalk and that it was responsible for placing the bench in position near the stow, were dismissed. Defendant appeals from these determinations, alleging that prejudicial trial errors occurred in the admission and exclusion of evidence, that the factual findings made by the judge were "clearly erroneous," and that the judgment award was so excessive as to be a denial of justice.

At the trial appellant offered in evidence a Marine Casualty Investigation Report, identified by Colonel George H. Richardson, Staff Judge Advocate at the United States Army Terminal, as a record made in the regular course of the Army's business. The United States Army, as operator of the Brooklyn Army Terminal, by regulation requires that all accidents at the terminal be reported to Army Personnel. Pursuant to that regulation plaintiff had immediately reported his injury to the Army timekeeper, Carl Puccio, who thereafter submitted to his superiors a report of his conversation with the plaintiff. A formal written accident report by a Marine Casualty Investigating Officer was subsequently made. Judge Cooper, relying on the rule pronounced by the Supreme Court in Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A. L.R. 719 (1943), refused to allow appellant to enter into evidence an affidavit of the Army timekeeper and the accident report.

In Palmer v. Hoffman an important exception to the broad language of the Federal Business Records Act, 28 U.S.C. § 1732 (1964), was formulated. The Supreme Court upheld a district court's refusal to receive into evidence an accident

report prepared by one of defendant-railroad's engineers and offered as evidence by the railroad. The Court reasoned that the regularity with which such reports are made does not by itself mandate admissibility. Rather it must first appear that the reports are required "for the systematic conduct of the business as a business." 318 U.S. at 113, 63 S.Ct. at 480. In Palmer, the Court found that the practice of making accident reports was designed to serve a different purpose; it held that the reports were specifically calculated to assist the railroad in litigation before the courts, and therefore lacked the necessary trustworthiness to be admissible.

The Second Circuit has never interpreted Palmer v. Hoffman as barring the admissibility of any and all accident reports. Instead, we have been guided by the purpose for which the record-maker has required the reports and by the relationship between the record-maker and the party who desires to introduce the evidence.

Accordingly, in Puggioni v. Luckenbach Steamship Company, 286 F.2d 340, 344 (2 Cir. 1961), we said:

> Although accident reports should not be admitted when the party making the report offers it for the purpose of its own exoneration from liability (cited cases omitted) this circuit has construed Palmer v. Hoffman to give trial judges discretion to determine whether the circumstances surrounding accident reports made by others justify their acceptance in evidence (cited cases omitted). The Federal Business Records Act should not be interpreted in a "dryly technical" way which would "reduce sharply its * * * usefulness."

See also Bowman v. Kaufman, 387 F.2d 582, 586, n. 3 (2 Cir. 1967); Hawkins v. Gorea Motor Express, Inc., 360 F.2d 933 (2 Cir. 1966); Bridger v. Union Ry. Co., 355 F.2d 382, 391 (6 Cir. 1966); McKee v. Jamestown Baking Co., 198 F.2d 551, 536 (3 Cir. 1952).

Subsequently, in United States v. New York Foreign Trade Zone Operators, Inc., 304 F.2d 792 (2 Cir. 1962), we expanded what was said in Puggioni. We held that the United States Government, as assignee of a claim of a federal employee whom the Government compensated under the Federal Employees Liability Act, could introduce into evidence an accident report filed with the Government by the compensated employee's superior—even though the entrant was in the employ of the party offering the report in evidence. Underlying our holding was the fact that the report was a condition precedent to the obtaining of compensation by the injured federal worker from the Government pursuant to the Federal Employees Liability Act. Its primary function, therefore, was not for use in litigation. The court stated:

> We do not understand Palmer v. Hoffman to require the exclusion from evidence of all records which were made with some contemplation that they might be valuable in the event of litigation. 304 F.2d at 797.

Also in Taylor v. Baltimore & Ohio Railroad, 344 F.2d 281 (2 Cir. 1965) we permitted a defendant-railroad to submit in evidence an accident report which was prepared by a railroad employee and which favored the railroad because the railroad was required by law to file such reports with the Department of Labor. The court reasoned that there, unlike the situation in Palmer v. Hoffman, inasmuch as the entrant "had no personal involvement in the accident and, in all likelihood, no awareness of the manner in which his entry might work to the employer's advantage," the degree of trustworthiness of the report was not diminished. 344 F.2d at 286. See also Pekelis v. Transcontinental & Western Air, Inc., 187 F.2d 122, 130 (2 Cir.), cert. denied, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951).

■ In the case at bar, the defendant sought to introduce an accident report made by a United States Army employee. The United States Army is not a party to the litigation. The entrant had no personal involvement in the accident. There is no reason to suspect any

lack of trustworthiness. Therefore, the finding of the district court that the report was inadmissible because made in preparation for litigation was error.

■ However, the case was heard by a court without a jury and this evidence denied reception, if received, would only have permitted, but not necessitated, an inference that the cause of plaintiff's accident was "slippery ice on the deck" rather than an "insecure bench." Moreover, the following statement by the court below assures us that the court would have reached the same determination even if the accident report had been formally received:

> In any case, each of the documents referred to in this paragraph do not offset our complete acceptance of plaintiff's testimony delivered with the utmost conviction.

Thus we find the error was not prejudicial to appellant. 28 U.S.C. § 2111 (1964).

■ The district court initially received the Army timekeeper's affidavit in evidence. In the court's written opinion, however, the affidavit was subsequently excluded on the ground that its admissibility would be contrary to the doctrine of Palmer v. Hoffman. Appellant contends that this constituted a prejudicial denial of the opportunity to produce the timekeeper in court. There is no merit to this argument. In electing not to call the timekeeper as a witness and to rely upon his affidavit appellant should have considered the possibility that the court might ultimately rule that the affidavit was inadmissible.

■ Appellant next assigns as error the ruling by the district court excluding from evidence the handwritten notes of the examining physician and plaintiff's witness, Dr. Tuby, taken by Dr. Tuby during a conversation with plaintiff's attorney (Exhibit G). Dr. Tuby's notes state that plaintiff "fell on ice on deck as he was walking on dunnage over drums." The admissibility of these notes is urged as an "admission against interests." The cases relied on by appellant, Terrasi v. South Atlantic Lines, 226 F.2d 823 (2 Cir. 1955), cert. denied, 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 855 (1956); Korte v. New York, N. H. & H. R.R., 191 F.2d 86 (2 Cir.), cert. denied, 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 652 (1951); Yates v. Bair Transport, Inc., 249 F.Supp. 681 (S.D.N.Y.1965), do not support the contention. Those cases deal only with the admissibility of doctors' reports under the Federal Business Records Act, 28 U.S.C. § 1732. In addition, the meaning appellant would attach to the term "admission against interests" is unclear. If appellant employed the term to refer to the traditional "declaration against interest" exception to the hearsay rule, then appellant's position is obviously an unsound one. A "declaration against interest" is only admissible where the declarant is unavailable due to death, insanity, or other similar reason. Wigmore, Evidence § 1456 (3d ed. 1940). More likely, appellant is advocating that Dr. Tuby's notes are admissible as an "admission." It is well-established that the exception to the hearsay rule permitting the introduction of "admission" applies to statements by a party; and, therefore, the admissibility of Dr. Tuby's notes would only be justified if an out-of-court statement by plaintiff's attorney constitutes an admission by the plaintiff. Generally an attorney's statements are those of the client only if made in the "management of the litigation," and an attorney's conversation with his client's physician seems to be beyond what is normally considered the "conduct of the litigation." See McCormick, Evidence § 244, p. 520 (1954); Morgan, Basic Problems of Evidence (September, 1962) 274 (1963); Morgan, McGuire & Weinstein, Cases and Materials on Evidence 577–578 (4th ed. 1957); Wigmore, Evidence § 1063 (3d ed. 1940). In any event, here again, even if Dr. Tuby's notes should have been received in evidence the court's failure to do so, if error, was not prejudicial error for the same reasons mentioned above in our discussion of the exclusion of the accident report.

■ Appellant also offered other documentary evidence to prove that the cause of plaintiff's accident was "ice on the drums" rather than an "insecure bench." All of this evidence was properly received and was considered by the district court, but in reaching its determination the court said: "We give no weight to the documentary evidence." Appellant urges that this remark by Judge Cooper indicates that his decision was not based upon a consideration of all the competent evidence before him. We disagree. A fair reading of Judge Cooper's opinion reveals that he merely accepted plaintiff's version of the facts. To do so was not error within the meaning of Fed.R.Civ.P. 52(a).

■ We come now to the dismissal by the district court of the third-party claims. A stevedore company's contractual "duty to remedy, or have the ship's crew remedy, a dangerous condition that exists for a period sufficient for the stevedore to have constructive notice thereof" is well established. Drago v. A/S Inger, 194 F. Supp. 398, 405 (E.D.N.Y.1961), aff'd, 305 F.2d 139 (2 Cir.), cert. denied, sub nom. Daniels & Kennedy, Inc. v. A/S Inger, 371 U.S. 925, 83 S.Ct. 292, 9 L. Ed.2d 232 (1962). See also Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 132–134, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Even if the shipowner is at fault, the stevedore company's implied warranty of workmanlike service, and hence its duty to indemnify the shipowner, may not be extinguished where the stevedore is responsible for bringing into play the defect which caused a seaman's injury. Drago v. A/S Inger, 305 F.2d 139, 143 (2 Cir. 1962), cert. denied, sub nom. Daniels & Kennedy, Inc. v. A/S Inger, 371 U.S. 925, 83 S.Ct. 292, 9 L.Ed.2d 232 (1962). See Crumady v. The Joachin Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L. Ed.2d 413 (1959); American Export Lines, Inc. v. Revel, 266 F.2d 82, 87 (4 Cir. 1959). But the stevedore has no duty to inspect a ship before sending its men aboard. Orlando v. Prudential S.S.

Co., 313 F.2d 822 (2 Cir. 1963). Nor is a stevedore responsible for latent defects not discoverable by a reasonable, if only a cursory, inspection. D'Amico v. Lloyd Brasileiro Patrinonic Nationale, 354 F. 2d 33 (2 Cir. 1965); Ignatyuk v. Tramp Chartering Corp., 250 F.2d 198 (2 Cir. 1957). However, the knowledge of a stevedore's employees concerning an unseaworthy condition of a vessel is imputable to the stevedore and gives rise to the stevedore's liability to the shipowner for breach of the implied warranty of workmanlike service. Mortensen v. A/S Glittre, 348 F.2d 383 (2 Cir. 1965); Orlando v. Prudential S.S. Co., supra 313 F.2d at 824.

■ In the case at bar appellant only established that American knew of the bench's existence. In addition to this the shipowner had to show American's knowledge that the bench, in the place where it was, created an unsafe condition. There was some evidence tending to prove that one of American's employees, Salzano, and perhaps the plaintiff, knew that the bench was insecure. The trial court, however, expressly found that the plaintiff was not contributorily negligent, and therefore it believed that plaintiff neither had nor should have had knowledge of the bench's instability. Plaintiff's own testimony is ample support for this conclusion. As for the alleged knowledge of Salzano, even if the trier of fact had believed that Salzano knew the bench was unstable, the court, before finding that Salzano had a duty to report the dangerous condition, had also to believe that Salzano should have known that someone might reasonably try to use the bench as a means of descent from the stow to the deck. The evidence on this point was scarce, and the court's determination is surely supportable. The potential hazard of an insecure bench is far less obvious than wet melted sugar on a deck after a rainstorm, Nicroli v. Den Norske Afrika-Og Australielinie, etc., 332 F.2d 651 (2 Cir. 1964), or freshly splattered oil on which one can easily slip. Mortensen v. A/S Glittre, supra.

The other third-party indemnity claim, the claim against the Anderson-Linton Company, is entirely without foundation. It was incumbent upon appellant to establish either that Anderson contracted to construct a catwalk for egress from the stow to the deck or that Anderson was responsible for the position of the bench or that Anderson had knowledge that the bench created an unseaworthy condition. Proof of each of these grounds was lacking.

Finally, the shipowner argues that the judgment of $15,000 for pain and suffering was grossly excessive. It is not novel for the Second Circuit to order a remittitur. See collection of cases in Wicks v. Henken, 378 F.2d 395 (2 Cir. 1967). But the very nature of the problem counsels restraint, and if the question is close we should affirm. Grunenthal v. Long Island R.R. Co., 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (U.S. Nov. 19, 1968); Dagnello v. Long Island R.R., 289 F.2d 797, 806 (2 Cir. 1961). The trial court found that plaintiff suffered a "severe contusion of the left elbow, superimposed upon preexisting hypertrophic spur at the olecranon process" and that the injury was permanent in nature. The testimony of the plaintiff and that of his doctor substantiate these findings. At the time of the judgment plaintiff had endured the effects of his injury for seven years and had a life expectancy of an additional twenty three years. Upon review of the entire record we find neither an abuse of discretion nor a verdict so excessive as to shock the conscience or to be a denial of justice.

Affirmed.

LUMBARD, Chief Judge (dissenting):

I dissent.

The exclusion of two important items of evidence which tend to defeat plaintiff Vaccaro's case, or at the least show contributory negligence on his part, was so prejudicial that the verdict of the court cannot stand. These erroneous exclusions of contemporaneous accident reports were crucial since the reports contradicted the testimony of Vaccaro given at trial more than seven years after the accident.

Vaccaro claimed the accident occurred as he was stepping down from a three foot high stow of drums onto an 18 inch high bench in order to descend to the deck. He testified that as he stepped onto the bench it slipped away, causing him to lose his balance and fall, striking his elbow and back on the drums. This testimony was given on May 17, 1967, more than seven years since he sustained his injuries on January 16, 1960. There was no other eyewitness to the accident who could support or refute plaintiff's testimony except Vincent Salzano, a subordinate fellow carpenter. But plaintiff did not call Salzano to the stand. Instead portions of his deposition were introduced which corroborated the fact that the bench had been at the location of the accident, but wholly failed to provide an account of how the accident occurred.

For the reasons stated by Judge Waterman it was clear error for the trial judge to refuse to admit the Marine Casualty Investigation Report, which was made pursuant to United States Army regulations in the regular course of the Army's business. The Report included the notes made by Army timekeeper Carl Puccio concerning a report made by Vaccaro himself immediately after the accident. The report indicated that Vaccaro had fallen not as the result of having stepped on the bench but rather because he had slipped on some ice located on the top of one of the drums.

This error was compounded by the treatment of the February 2, 1960 affidavit of Carl Puccio which affirmed that his notes taken the day of the accident from Vaccaro were accurate. At the trial the judge received the affidavit together with the attached notes made by Puccio. But several weeks later, in writing his opinion, the trial judge rejected the affidavit on the mistaken

theory that it had been made in preparation for litigation.

After rejecting these two valuable pieces of documentary evidence the trial court awarded the plaintiff a grossly excessive recovery of $15,000, despite the fact that Vaccaro was absent from his job for only 12 days after the accident and has been working ever since.

Both the Investigation Report and Puccio's affidavit contained contemporaneous accounts of the accident which conflicted with Vaccaro's testimony at trial. Had the trial judge admitted these documents and accorded them full consideration they might well have materially undermined the credibility of Vaccaro in the court's mind. The trial judge's offhand remark in his opinion that "in any event" he would have reached the same result had the documents been admitted does not purge his errors of their prejudicial effect. It is quite evident that the judge was in no frame of mind to give proper weight to this evidence in view of his comment during the trial that the documents constituted "rank * * * hearsay." In any event, an appellate court is not compelled to accept as conclusive a trial judge's opinion concerning the credibility of oral testimony when the probity of this testimony is cast in serious doubt by documentary evidence, see Orvis v. Higgins, 180 F.2d 537, 539 (2d Cir.), cert. denied 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950), particularly where as here this evidence was not adequately considered by the trial judge.

Surely it is difficult enough for shipowners to defend against suits of this sort, based entirely on the claimant's testimony, when the prospect of a substantial verdict may provide an incentive for an imaginative reconstruction of all that happened long ago and all that has been suffered since.

Therefore I conclude that the trial judge's errors were so prejudicial that the judgment should be set aside and a new trial ordered.