**Trenton MITCHELL, Plaintiff-Appellant,**

v.

**AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant-Appellee.**

**No. 30, Docket 32552.**

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1969.

Decided July 10, 1970.

---

Abraham E. Freedman, Charles Sovel, New York City, for plaintiff-appellant.

Stephen K. Carr, M. E. DeOrchis, New York City (Haight, Gardner, Poor & Havens, New York City), for defendant-appellee.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

The plaintiff-appellant, a seaman, brought this action under the general maritime law as modified by the Jones Act, 46 U.S.C. § 688, to recover damages

for an injury he allegedly sustained in a fall that he claimed occurred while he was employed as a fireman aboard the S.S. INDEPENDENCE, a vessel owned and operated by the defendant-appellee, American Export Isbrandtsen Lines, Inc.

The case was tried to a jury which returned a special verdict for the defendant that the plaintiff had not established his claim. Plaintiff's motion to set aside the verdict was denied and judgment was entered dismissing the plaintiff's complaint. Plaintiff then, pursuant to Rule 59, Fed.R.Civ.P., timely moved for a new trial. This motion was also denied and plaintiff appeals. We affirm the judgment and order entered below.

The one issue on appeal is whether the admission into evidence of the Report of Illness made out and signed by the ship's crew's physician who treated plaintiff on shipboard is reversible error. At the trial the fundamental issue was one of credibility. Plaintiff testified that between 2:00 and 2:30 A. M. on November 22, 1964 while he was engaged in emptying a bucket of kerosene into a waste oil tank in the engine room of the INDEPENDENCE he slipped on an accumulation of oil and thereby twisted and injured his back. He further related that after walking a few steps he collapsed and subsequently was taken to his quarters where he received medical treatment. He was unable to work for the remainder of the voyage and his condition was subsequently diagnosed as a herniated intervertebral disc.

The corporate defendant sought to refute the plaintiff's claim that his collapse and his back injury were caused by the occurrence plaintiff claimed caused it. The refutation was successfully accomplished through the testimony of the ship's doctor, that of three of plaintiff's shipmates, and by the introduction into evidence of documents. Dr. Bashline, the ship's doctor, testified that while examining the plaintiff shortly after his collapse, plaintiff gave no history of an injury or accident. To corroborate the doctor's testimony the ship's Surgeon's Log was introduced into evidence without objection. It merely reads: "States he [plaintiff] has a backache." Another document, a "Report of Illness" prepared by Dr. Bashline in connection with his examination, was admitted into evidence over plaintiff's objection. It stated:

Complained of sudden backache, no history of injury. Having difficulty walking.

Two of the three fact witnesses talked with plaintiff in the fire room after he had been stricken and before the plaintiff had been examined by Dr. Bashline. They both testified that at that time the plaintiff had not said that he had suffered an accident. One witness, First Engineer O'Callahan, testified that he visited the plaintiff in plaintiff's room sometime on November 22 after Dr. Bashline's examination and had asked the plaintiff if he had had an accident. The plaintiff had replied, "No." [1]

1. In pertinent part First Engineer O'Callahan's testimony was the following:

Q. You're referring to November 22, 1964? A. Yes, sir.

Q. When do you come on the job? A. Eight o'clock in the morning.

Q. And what time do you work 'til? A. Five.

Q. So you don't stand the watch as First Assistant? A. No, sir.

Q. And when you came on watch at 8:00 o'clock, of what were you informed, regarding Mr. Mitchell? A. That he had been taken off watch earlier, at 3:00 o'clock in the morning on the 12:00 to 4:00 watch. He was relieved by another man.

Q. And what did you do, when you learned this? A. Some time during that day, I went to the hospital looking for him, to find out what had happened.

Q. And did you find him? A. No, I didn't. I found him in his room.

Q. And did you speak to him in his room? A. I did.

Q. What conversation did you have with Mr. Mitchell in his room? A. I had asked him if he had had an accident, during his watch.

Q. Yes. A. And he said no, he did not, sir.

Though the ship provided a form to be filled out for the reporting of accidents different from that for reporting illnesses, no accident report was prepared by any of the ship's officers in view of plaintiff's denial that he had suffered an accident, and the pertinent information was contained in the "Report of Illness" above-mentioned and in the ship's Surgeon's Log,[2] which detailed the day-to-day medical attention and treatment plaintiff received until the end of the voyage.

As stated earlier, the issue before us is whether the admission into evidence of this Report of Illness over plaintiff's objection was erroneous and if erroneous was so prejudicial as to require the reversal of the judgment below and a remand for a new trial.

While Dr. Bashline was testifying as defendant's witness he was handed the Report of Illness in order to refresh his memory of the relevant events in which he had participated. Plaintiff's objection to this procedure was overruled. With the document in hand the doctor then testified from his recollection as to the history be obtained from plaintiff at the time he was called to first examine plaintiff and the subsequent attention he gave to the seaman on November 22, 1964. Plaintiff seasonably objected to permitting Dr. Bashline to so testify, but, after plaintiff's objections had been overruled, the doctor testified that the Report of Illness was a document kept in the regular course of the crew's hospital affairs and business. Dr. Bashline was then asked to identify the ship's surgeon's log of the voyage and both log and Report were offered in evidence. The admission of the former was not objected to but the admission of the latter was. After the trial judge was satisfied from his own questions of the witness that the log and the Report were recorded in the regular course of the ship's business at about the time of the events they covered, plaintiff's objection to the Report was overruled and both documents were admitted into evidence. Plaintiff's counsel supported his objection to the admission of the Report by citing to the court Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943) and Puggioni v. Luckenbach S.S. Co., 286 F.2d 340 (2 Cir. 1961), quoting from the latter opinion.[3] In view of the

---

Q. Did he— A. He said—

Q. —did he tell you what had happened during his watch? A. Yes, he said that he had his hip up on a rail underneath the ventilator in the fire room, and when he put his foot back down on the deck, he felt a sharp pain. He mentioned nothing about falling or slipping.

Q. As a result of this conversation, did you prepare an accident report? A. No, I did not.

2. There were two medical officers on board the INDEPENDENCE. A Doctor F. A. Read was the Ship's Surgeon. Dr. Bashline was called the Crew Surgeon and was the second medical officer.

3. Whenever counsel objected to the admission of the Report he based his objection upon a discussion that occurred prior to the impaneling of the jury. The grounds of objection were understood by court and counsel to be those stated in plaintiff's memorandum of law submitted to the trial judge, which we quote:

It is anticipated that the defendant may attempt to offer into evidence the ship's illness report relating to plaintiff. It is respectfully submitted that this report is not admissible. In Puggioni v. Luckenbach S.S. Co., 286 F.2d 340, (2d Cir. 1961), the Court of Appeals held that such a report should be excluded stating:

Accident reports, however, are frequently not reliable because often such evidence is "dripping with motivations to misrepresent." Hoffman v. Palmer, 2 Cir. 1942, 129 F.2d 976, 991, affirmed 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645. In line with the considerations regarding the use of hearsay in evidence, the Supreme Court held in Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, that an accident report prepared and offered by the party sought to be held liable was not admissible under the Federal Business Records Act although it might appear to satisfy its literal requirements. The Court said as to such reports, that their primary utility is in litigating, not in conducting the business as a business. See 318 U.S. at pages 114–115, 63 S.Ct. at 481.

ground relied upon by plaintiff and the interrogation of Dr. Bashline by the court it would seem that the Report was admitted pursuant to the statutory evidentiary rule set forth in the Federal Business Records Act, 28 U.S.C. § 1732.[4] Thereafter Dr. Bashline's direct examination continued. When it was concluded he was subjected to a most vigorous cross-examination during which several inconsistencies between his oral testimony and the contents of these two documents and those of the official log of this voyage of the S.S. INDEPENDENCE were uncovered and brought to the jury's attention.

■ In urging his position upon us plaintiff apparently would have us overlook the fact that Dr. Bashline was a witness in this case and was examined and cross-examined in the presence of the jury, the trier of fact. The exceptions to the hearsay rule which the Federal Business Records Act seeks to codify were designed to permit, under certain delineated circumstances, the introduction into evidence of documents when it was impractical or impossible to have the makers of them in court. In the much criticized case of Palmer v. Hoffman, *supra,* the maker of the report had deceased and was not available for cross-examination.

In United States v. New York Foreign Trade Zone Operators, 304 F.2d 792, 797 (2 Cir. 1962) we pointed out that there is an entirely different trial situation when the maker of the report is available in court to testify relative to the events which he recorded, for then the trustworthiness of his entries can be tested through adversary cross-examination of him. Here Dr. Bashline underwent extensive questioning as to the reliability of the facts he recorded in the Illness Report which he made out in regular course and signed during the voyage in his capacity as the doctor attending his patient. The document held inadmissible in Palmer v. Hoffman was a signed statement of a locomotive engineer who was driving a locomotive when it collided at a grade-crossing with an automobile. As a result of this accident severe and permanent injuries were suffered by the operator of the automobile, and his wife, a passenger in the car, was killed. It was of course inevitable that claims for damages for the husband's injuries and for the wife's death would be presented to the railroad and that if the claims could not be amicably adjusted suits would follow. The statement was one taken in question-and-answer form and represented a stenographic record of an interview, two days after the accident, between the engineer and an assistant superintendent of the railroad. The Court held that this Q and A record was "not a record made for the systematic conduct of the business as a business" 318 U.S. 109 at 113, 63 S.Ct. 477, at 480, but clearly was made with the likelihood of litigation in mind. As such, the court concluded that accident reports obtained by management from employees of a business are not "typical of entries made systematically or as a matter of routine to record events or oc-

---

4. 28 U.S.C. § 1732, in pertinent part, reads as follows:

§ *1732. Record made in regular course of business; photographic copies.*

(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

The term "business," as used in this section, includes business, profession, occupation, and calling of every kind.

currences, to reflect transactions with others, or to provide internal controls." *Id.* at 113, 63 S.Ct. at 480.

■ The Court indicated throughout its opinion that inasmuch as the purpose of the statute was to make records admissible which were not to be testified to by the maker of them, the records admissible under the Federal Business Records Act should bear the stamp of reliability and trustworthiness, and should reflect routine day-to-day operations.

■ In admitting the Report of Illness the trial judge recognized, as we do, that its admission was not proscribed by the rule in Palmer v. Hoffman. The circumstances surrounding the making of the record were such as to convince that the record was a reliable one and not made for the specific purpose of use in litigation. The entries were those of an attending physician, were required to be kept as such, stated the patient's complaint as related to the doctor by the patient at the beginning of the patient-doctor relationship, and were the type and kind that careful physicians customarily make. In addition, the circumstances at trial, as we have pointed out, were entirely different from those in Palmer v. Hoffman. The maker of the business record was in court, was on the stand, and under oath testified relative to the events contained in the record he had kept as attending physician, confronted the patient he had treated, and was subject to cross-examination as to every item in his record.

We have recognized the limitations of the Palmer v. Hoffman teachings, and we have permitted the introduction into evidence of accident reports prepared by the parties offering them when it appears, as it most assuredly appears here, that no motive to falsify can be chargeable to the maker of the report, or, if one might suspect such a motive, the surrounding circumstances convince that the motive has been negated, Lindheimer v. United Fruit Co., 418 F.2d 606 (2

Cir. 1969); Keohane v. N. Y. Central R. R., 418 F.2d 478 (2 Cir. 1969); Gaussen v. United Fruit Co., 412 F.2d 72 (2 Cir. 1969); Taylor v. Baltimore & O.R.R., 344 F.2d 281 (2 Cir. 1965).

Finally, the only legitimate end toward which rules relating to the admissibility of evidence should lead is to get at the truth. In furtherance of that end 28 U.S.C. § 1732 was adopted, and in furtherance of that end our court, with other courts, has in proper cases left the issue of the admissibility of documents comprehended within the language of that section to the discretion of trial judges. See, for example, our holding in Puggioni v. Luckenbach S.S. Co., 286 F.2d 340, 344 (2 Cir. 1961). And see, generally, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 8–03(b) at pp. 188–190.

Therefore, in view of the trial situation here, the admission of the Report of Illness over plaintiff's objection that the Report did not qualify as a Business Record was not error. However, because of this trial situation it was nevertheless erroneously admitted. But see footnote 6 *infra*.

■ Plaintiff properly contends to us that even if the "Report of Illness" could qualify as an admissible record under the Federal Business Records Act, it was erroneous to permit the defendant to introduce it in evidence because it constituted a prior consistent statement of what the doctor in person was testifying to at trial. The Federal Business Records Act purposes to make the hearsay statements that are comprehended within the statute's scope admissible because of the unavailability and inconvenience of producing at trial those persons with first hand knowledge of the facts they have recorded; and it seems obvious that if the person making the business entry is a witness at the trial and testifies from his own personal knowledge to the events he recorded there is no ostensible reason for admit-

ting the hearsay written business record entry he made. The record's admission could only be useful to the party calling the witness for the purpose of bolstering the witness's credibility by showing that the witness had not changed his story from the time he made the entry. That such written statements are not admissible by the party calling the witness in either a criminal or civil case has long been recognized even after the witness whose testimony is sought to be bolstered has been contradicted. As was said by Judge Learned Hand in United States v. Rappy, 157 F.2d 964, 967 (2 Cir. 1946), cert. denied, 329 U.S. 806, 67 S.Ct. 501, 91 L.Ed. 688 (1947):

> When a party uses an earlier statement of his own witness to refresh the witness's memory, the only evidence recognized as such is the testimony so refreshed; and the party may not put the statement in evidence, although the other side may do so, and apparently the jury may call for it, sua sponte (citing Wigmore on Evidence § 763). This is a consequence of the general doctrine that corroboration of a witness by an earlier consistent version of his testimony is not competent. The conventional reason is that it does not give greater credence to a witness's story that he has said the same thing before, though there are concededly some exceptions.

But, of course, a witness while on the stand may examine his written record of an occurrence if it assists him to revive his present recollection of the occurrence and his recollection of the circumstances that caused him to be an actor therein. Therefore, after Dr. Bashline had testified from his personal knowledge of his conversation with the plaintiff and of the professional treatment he prescribed, his "Report of Illness" was not competent for any purpose,[5] but in view of plaintiff's subsequent demonstration through his cross-examination of Dr. Bashline that the doctor's recollections of time and place did not in all respects jibe with the entries in the Report its admission into evidence could not have prejudiced the plaintiff's case to such an extent that a reversal of the verdict is required and a new trial ordered.[6] In any event, it was only cumulative to the oral testimony and to the ship surgeon's log, and its effect was minimal when compared to the oral testimony of the doctor and that of the shipmate witnesses, all of whom had testified that the plaintiff, at the time of his incapacity, had not claimed his condition had been caused by an accident. See note 1, *supra*. See Central R.R. Co. v. Jules S. Sottnek Co., 258 F. 2d 85, 87–88 (2 Cir.), cert. denied, 359 U.S. 913, 79 S.Ct. 588, 3 L.Ed.2d 574 (1958).

Affirmed.

---

5. United States v. Adams, 385 F.2d 548, 550, n. 3, n. 4 (2 Cir. 1967) (Friendly, J.); Johnson v. United States, 121 U.S. App.D.C. 19, 347 F.2d 803, 805–806 (1965); Boeing Airplane Co. v. O'Malley, 329 F.2d 585, 599 (8 Cir. 1964); Schoppel v. United States, 270 F.2d 413, 417 (4 Cir. 1959); 4 Wigmore, Evidence (3d Ed. (1940)) §§ 1124(1), 1127. Cf. Bowman v. Kaufman, 387 F.2d 582, 588 (2 Cir. 1967).

6. Moreover, this ground for exclusion was not presented to the trial court. When the Report of Illness was marked for identification and then offered into evidence plaintiff's counsel objected to admission "on the grounds previously stated." These grounds (see fn. 3 *supra*) related to appellant's claim that this type of document was not a record made in the regular course of business such as to permit its introduction pursuant to the exception to the hearsay rule codified in 28 U.S.C. § 1732.