Philip **SHEEHAN**, Plaintiff,

v.

**MOORE–McCORMACK LINES, INC.** and **SS. MORMACTEAL,** her boilers, engines, etc., **Defendants, Third-Party Plaintiffs,**

v.

**JOHN W. McGRATH CORPORATION,** **Third-Party Defendant.**

No. 63 Ad. 184.

United States District Court
S. D. New York.

Oct. 6, 1969.

DiCostanzo & Klonsky, by Edward D. Lory, Brooklyn, N. Y., for plaintiff.

Browne, Hyde & Dickerson, by W. Shelby Coates, New York City, for defendant-third-party plaintiff.

Joseph F. McGoldrick, by James M. Leonard, New York City, for third-party defendant.

CANNELLA, District Judge.

This is an action by plaintiff for money damages for personal injuries allegedly caused by the negligence of the defendant and the unseaworthiness of the vessel, S. S. Mormacteal. The defendant claims indemnity from the third party defendant, John W. McGrath Corporation, plaintiff's employer, for breach of its warranty of workmanlike service. The third-party defendant in turn claimed indemnity against the plaintiff; however, this counterclaim against the plaintiff by third-party defendant was dismissed in open court.[1] Plaintiff was employed by third-party defendant as a longshoreman-extra laborer working on the pier. At the time of his injuries, he was being utilized as a linesman in the shifting of the Mormacteal. The court finds that plaintiff has shown by a fair preponderance of the credible evidence that defendant was negligent, that the Mormacteal was unseaworthy, and that said negligence and unseaworthiness were the proximate cause of the plaintiff's injuries. However, the court also finds that plaintiff was guilty of contributory negligence and under the doctrines of contributory fault his recovery will be proportionately reduced. Judgment shall be entered on behalf of the plaintiff against the defendant. The court also finds that defendant has established that it is entitled to indemnity from the third-party defendant herein, and that judgment shall be entered on behalf of defendant third-party plaintiff, shipowner, against the third-party defendant, stevedore.

---

1. Cf. McLaughlin v. Trelleborgs Angfartygs A/B, 408 F.2d 1334, 1335 (2d Cir. 1969), cert. denied Golten Marine Co., Inc. v. Trelleborgs Angfartygs A/B, 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 464 (1969); Nicroli v. Den Norske Afrika-OG Australielinie, 332 F.2d 651, 656 (2d Cir. 1964).

The court finds that it has jurisdiction over the parties and the subject matter of this action.[2]

On February 20, 1964, plaintiff was employed by third-party defendant, John W. McGrath Corporation, as a member of a longshoreman-extra labor force working on the pier at the 23rd Street terminal of the defendant, Moore-McCormack Lines, Inc. Plaintiff, who was forty-six, had been on the waterfront for twenty-one years, including a short period as a tug captain. The defendant found it to be desirable or necessary to shift the Mormacteal from the south side of the 23rd Street pier to the north side thereof. Pursuant to a written agreement between Moore-McCormack Lines, Inc. and John W. McGrath Corporation wherein McGrath was to provide extra labor to handle ships' lines, the defendant requested such linehandlers from the third-party defendant. Plaintiff was one of six men chosen to help handle the lines during this shifting operation and one of three assigned to handle the forward lines of the vessel.[3] Usually six to eight men are assigned to this job. However, for some reason, only three were used at this time. The vessel was to be shifted without the benefit of tugs, since there was at that time a tugboat strike in progress in New York Harbor. The vessel was under her own power, backing slow astern, and the lines were to be utilized to enable the vessel to warp herself around the end of the pier and onto the north side without drifting too far off. After the vessel's lines, 4″ manila hawsers, were singled up, leaving a breast line and a bow line remaining as the working lines, they were then to be separately moved to the next bollard aft of their previous position. The lines were to be loosened from the vessel's bitts on deck and then removed from the one bollard and placed on the next one aft by the linehandlers on shore. The first line presents no difficulty. However, when the second line is moved, its eye must be dipped under the other taut line and up through that line's eye and then placed on the bollard. This is done to facilitate the removal of the lines later on. It was in moving this second line and "dipping it" that plaintiff was injured. The overall direction of the entire operation was in the defendant's personnel and crew aboard the vessel, stationed in this case on the foredeck, and in her personnel on the pier (Capt. Johansen). However, they relied to some extent upon the expertise and knowledge of the stevedore's linehandlers to know what had to be done.

The plaintiff was injured when he and Mr. Fuimano were moving the second line to an after bollard. Plaintiff was to receive the line from Fuimano as Fuimano pushed it up through the first line's eye, and then he was to place it upon the bollard. In performing this operation, plaintiff bent over or "straddled" the first line which was on the bollard. This first line was surged (tightened or loosened) by a crew-member on the vessel's foredeck without notice or warning and without a "lookout" who could have warned the plaintiff. This surging caused the line to whip or vibrate, and it struck the plaintiff, throwing him backwards against Captain Johansen, who was close-by, and then onto the pier's stringpiece and apron.

Plaintiff was taken to Long Island College Hospital by ambulance where he was admitted for emergency treatment in a conscious state, although he was apparently unconscious for a period of time immediately after the accident. The plaintiff suffered some swelling to the right sterno-cleido mastoid, abrasions to

---

2. 28 U.S.C. § 1333(1) (1964); 46 U.S.C. § 740 (1964). See Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 209–210, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Strika v. Netherlands Ministry of Traffic, 185 F.2d 555 (2d Cir.), cert. denied, 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343 (1950).

3. The other forward line handlers were Paul Fuimano and Gene Stratis. A Captain Paul A. Johansen, defendant's then Assistant Director of Operations, was present and "directed" the line handling operation.

**420**

the neck and right shoulder, and injuries to the left elbow and spine at the C4–C5 and C6–C7 levels. The C4–C5 injury was an aggravation of previous disc injuries from automobile accidents occurring in 1958 and 1963. After release from the hospital, plaintiff was treated by a Dr. Harris Feinberg for about a month and thereafter by a Dr. David J. Graubard who testified at the trial. The plaintiff was out of work due to the injuries from February 20 to March 23, 1964 and at intermittent times thereafter. Plaintiff suffers some partial impairment of the left elbow and the neck.

The court finds that the plaintiff's injuries were proximately caused by the negligence of the defendant and the unseaworthiness of the defendant's vessel. The defendant was negligent in its failure: (1) to provide a safe place for the plaintiff to work in;[4] (2) to warn the plaintiff of its intended actions regarding the line; (3) to provide a "lookout" during the operation; (4) to have assigned sufficient personnel to perform the task safely; and (5) to provide adequate supervision of the operation. It also finds that the S.S. Mormacteal was unseaworthy at the time of the accident.[5]

The defendant urges that plaintiff is not in the category of persons entitled to the warranty of seaworthiness.[6] In order to be entitled to the doctrine of unseaworthiness, the vessel must be in navigation,[7] and the plaintiff must be "doing a seaman's work and incurring a seaman's hazards." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 99, 66 S.Ct. 872, 880, 90 L.Ed. 1099 (1945).[8] In light of the Supreme Court's teachings in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1945); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); and Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), this court holds that plaintiff is within that category of harbor workers which is protected by the doctrine of seaworthiness.[9] However, even if plaintiff were not within that class, the defendant is liable in negligence to plaintiff under the maritime common law.[10]

---

4. See Pope & Talbot Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). See also Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

5. See Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). See also Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1966).

6. Defendant cites Fematt v. Nedlloyd Lines, 191 F.Supp. 907 (S.D.Calif.1961) as authority for its position. That case involved a motion to amend a complaint to add additional parties defendant. The court, in denying the leave to amend, held that to do so would negative the diversity jurisdiction of the court and compel a remand to the state courts. However, the state court action would then have been barred by the California Statute of Limitations, and the case would eventually return to federal court anyway. In so exercising its discretion, the court stated that in passing that a linesman was not entitled to the doctrine of unseaworthiness. This court is unable to agree with this dictum. See Imperial Oil Ltd. v. Drlik, 234 F.2d 4 (6th Cir.), cert. denied, 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed.2d 236 (1956). See also Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963).

7. This point is not disputed by the parties here. See Roper v. United States, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1 (1961).

8. See also Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963).

9. See Imperial Oil, Ltd. v. Drlik, 234 F.2d 4 (6th Cir. 1956). See also G. Gilmore & C. Black, The Law of Admiralty, § 6–53 at 358 (1957).

10. See Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 413, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

■■ The court further finds that plaintiff was *guilty of contributory negligence* in that he bent over or "straddled" a working line, a line which he should have known through his years of experience on the waterfront was liable to become taut or slacken periodically. Further, the plaintiff could have been forewarned of the line's tightening by the characteristic of a manila line to sing when it is tightened, a fact which was admitted upon questioning by the court. The court finds that because of this contributory negligence, plaintiff was equally at fault with the defendant for his injury. This contributory negligence will not bar the plaintiff's recovery, but it will go to mitigate damages under the doctrine of comparative negligence in admiralty.[11] The plaintiff has incurred $436.45 in medical expenses to date and will incur future expenses.[12] The plaintiff lost 32 days work after his initial injury, and further loss was intermittent, but total accumulation of lost work time was approximately 2½ months. The injuries to the plaintiff have caused some impairment, pain and suffering and will in the future continue to cause pain and suffering. The court, after a consideration of all the evidence and the plaintiff's actual damages, past and future pain and suffering and impairment, and with a reduction of 50% on account of the plaintiff's contributory negligence directs that judgment be entered for the plaintiff in the amount of $5,000.00.

■ Having concluded that the defendant is liable to the plaintiff under the doctrine of unseaworthiness and/or negligence, it remains for the court to determine the defendant's indemnity claim against the third-party defendant stevedore, the employer of the plaintiff. Indemnification is based upon a contractual relationship, express or implied,[13] between the vessel owner and the stevedore. The parties herein had a written contract, and the third party defendant John W. McGrath Corporation thereby warranted to the defendant that he would perform the work under the contract in a workmanlike manner. The contract included the providing of extra labor for the handling of ships' lines.

■■ The fact that the plaintiff has been held contributorily negligent and that he is an employee of the third-party defendant stevedore compels a finding that McGrath has breached its warranty of workmanlike service. See McLaughlin v. Trelleborgs Angfartygs A/B, 408 F.2d 1334 (2d Cir. 1969), cert. denied, Gotten Marine Co., Inc. v. Trelleborgs Angfartygs A/B, 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 464 (1969); Mortensen v. A/S Glittre, 348 F.2d 383 (2d Cir. 1965). Judge Friendly stated in *McLaughlin* at 1336, of 408 F.2d: "The rationale of *Mortensen* was rather that the jury's finding of contributory negligence by third-party defendant's employee was conclusive of breach of the defendant's WWP [warranty of workmanlike performance]." The stevedore here, although it did not warrant a perfect linehandler, did warrant one who would not in fact be negligent. See 408 F.2d at 1337; Italia Societa Per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). Thus, under existing law, since the injuries to the plaintiff were caused in part by plaintiff's

---

11. See Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939); Movible Offshore Co. v. Ousley, 346 F.2d 870 (5th Cir. 1965).

12. The parties have stipulated medical costs of $331.45 in their pre-trial order. Dr. David J. Graubard testified that his additional fee was $105.00 which the court finds as reasonable.

13. See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1955); Weyerhaeuser S.S. Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed. 2d 491 (1958); Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L. Ed.2d 413 (1958); Waterman S.S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960).

contributory negligence, the shipowner may recover indemnity for the entire amount from the stevedore third-party defendant. Further, the defendant's negligence here was not so gross as to interfere with or hinder the proper performance of the stevedore in his operations so as to preclude indemnity. See Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).

All motions upon which decision was reserved upon trial are denied.

The above shall constitute the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

It is ordered that the plaintiff shall have judgment against the defendant in the amount of $5000.00.

It is further ordered that defendant shall have judgment against the third-party defendant for the total amount of the plaintiff's recovery from the defendant-third-party plaintiff, counsel fees, and costs. Counsel fees will be ascertained by the court unless the parties stipulate otherwise.

So ordered.