**Walter KWARTA**

v.

**UNITED STATES LINES, INC.,**
a body corporate,

v.

**JARKA CORPORATION OF BALTIMORE.**

**Civ. No. 20231.**

United States District Court,
D. Maryland.

June 17, 1970.

Bernard J. Sevel, Baltimore, Md., for plaintiff.

John H. Skeen, Jr., and Skeen, Wilson, Gilbert & Roach, Baltimore, Md., for defendant and third-party plaintiff.

William R. Dorsey, III, and Semmes, Bowen & Semmes, Baltimore, Md., for third-party defendant.

THOMSEN, Chief Judge.

This 9(h) case takes us once again into the wonderland created by *Sieracki*,[1] *Haenn*,[2] *Ryan*[3] and their progeny. The following facts have been found after considering the credibility of the several witnesses.

On July 25, 1968, longshoremen employed by Jarka, the third-party defendant, were engaged in stevedoring activities on the S.S. American Racer, owned by United States Lines, the defendant, in Baltimore harbor. Plaintiff, a tractor operator, employed by Jarka, was working with a gang in the No. 4 hold, forward of the midship housing. The No. 4 hold has three hatches; each has a cover, sometimes called a tank top, the sections of which fold automatically toward the after end of the hatch, creating a sort of wall along the forward side of a 12 ft. passageway between the No. 4 hatches and the housing. A projection from the housing extends over most of the 12 ft. passageway. The only usable ladder into the portion of the hold where plaintiff had been working during the morning of July 25 was on the port side of the off-shore (port) hatch near its forward end.

Just before noon plaintiff climbed the ladder to the weather deck, walked aft along a walkway 4½ ft. wide between the hatch coaming and the port bulwark to reach the 12 ft. thwartship passageway, which led him toward the gangway on the starboard side, by the midship housing.

There is a tie-up cleat in the 4½ ft. port side walkway, about 1 ft. forward of its intersection with the thwartship passageway. The cleat extends 1½ ft. from the bulwark, leaving 3 ft. of the

1. Sieracki v. Seas Shipping Co., 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

2. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952).

3. Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

walkway clear. There was no other obstruction in the walkway near that point when plaintiff and the other longshoremen left the ship for lunch.

At some time during the lunch hour a seaman working on the port side of the ship placed a coiled heaving line in the 3 ft. space between the cleat and the hatch coaming. The line was about as thick as a man's little finger and the coil was about 2 ft. in diameter. The aftermost part of the coil was just about 1 ft. forward of the T-shaped intersection of the 4½ ft. port walkway and the 12 ft. thwartship passageway. A seaman also left two swabbing brushes leaning against the cleat.

Plaintiff was the first of the longshoremen to return to the ship, at about 12:50 p. m., with a fellow employee immediately behind him. Plaintiff ascended the gangway, walked from starboard to port along the 12 ft. passageway, turned into the port side walkway, tripped over the coiled heaving line, fell, twisting as he fell, and struck his left elbow on the hatch coaming, injuring the ulnar nerve.

Plaintiff testified that he did not see the coiled line until his foot was about to strike it; that he was looking where he was going because, he said, you never can tell what may be on the deck of a ship. The Court finds, however, that if plaintiff had been looking where he was going he would have seen the coiled line at least a step or two before he did, and could have avoided the accident.

■ 1. The act of the seaman in placing the coiled line in the narrow walkway opposite the cleat was clearly negligent and rendered the ship unseaworthy.[4]

■ 2. Plaintiff's negligence contributed to the accident to the extent of 33⅓%.

■ 3. Jarka was under no duty to inspect the walkways before its men returned to the hold after lunch. Orlando v. Prudential Steamship Corporation, 313 F.2d 822 (2 Cir. 1963); Calderola v. Cunard Steamship Co., Ltd., 279 F.2d 475 (2 Cir. 1960); Vaccaro v. Alcoa S. S. Co., 405 F.2d 1133 (2 Cir. 1968); Cia Maritima Del Nervion v. Flanagan Shipping Corp., 308 F.2d 120 (5 Cir. 1962); Ray v. Compania Naviena, 203 F.Supp. 206 (D.Md.1962).

No negligence on the part of any officer or employee of Jarka, except the contributory negligence of plaintiff himself contributed to plaintiff's injury. The evidence shows that the coil may have been in the walkway anywhere from 2 to 49 minutes. Defendant shipowner has not shown that Jarka had a reasonable opportunity to discover and remove the coil. Cf. Frasca v. S.S. Safina E. Ismail, 413 F.2d 259 (4 Cir. 1969); and cases cited therein.

In making the foregoing findings and conclusions, the Court has considered § 1504.91(a) and (b) of the Safety and Health Regulations for Longshoring, which provide:

"1504.91 Housekeeping.

"(a) Weather deck walking and working areas shall be kept reasonably clear of lines, bridles, dunnage and all other loose tripping or stumbling hazards.

"(b) Gear or equipment, when not in use shall be removed from the immediate work areas, or shall be so placed as not to present a hazard."

---

4. With respect to seaworthiness, the Court agrees with defendant shipowner that the test to be applied is the test set out in Mitchell v. Trawler Racer, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), as follows:

"What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended serivce." 362 U.S. at 550, 80 S.Ct. at 933.

See Provenza v. American Export Lines, 324 F.2d 660 (4 Cir. 1963); Venable v. A/S Det. Forenede Dampskibsselskab, 399 F.2d 347 (4 Cir. 1968); Frasca v. S. S. Safina E. Ismail, 413 F.2d 259 (4 Cir. 1969).

The contributory negligence of a plaintiff longshoreman alone may under certain circumstances be the basis for requiring his employer to indemnify the ship owner.[5] McLaughlin v. Trelleborgs Angfartygs A/B, 408 F.2d 1334 (2 Cir. 1969). The opinion of Judge Friendly in that case demonstrates the present fantastic state of the law in this field. See also Mortensen v. A/S Glittre, 348 F.2d 383 (2 Cir. 1965); Damanti v. A/S Inger, 314 F.2d 395 (2 Cir. 1963).

The authorities do not make clear what acts on the part of a shipowner may bar its claim to indemnity. See Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Italia Societa Per Azioni v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Calmar Steamship Corp. v. Nacirema Operating Co., 266 F.2d 79 (4 Cir. 1959); Frasca v. S.S. Safina E. Ismail, 413 F.2d 259 (4 Cir. 1969).

In *Italia,* supra, the Court reiterated its position that a tort standard of negligence is inapplicable to the stevedore's liability under its implied warranty of workmanlike service, and said that "liability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury. Where, as here, injury-producing and defective equipment is under the supervision and control of the stevedore, the shipowner is powerless to minimize the risk; the stevedore is not." 376 U. S. at 324, 84 S.Ct. at 754.

In the instant case the negligent act of the seaman in placing the coiled heavy line in the narrow walkway opposite the cleat, and near the intersection of the walkway with the thwartship passageway, created a trap into which plaintiff negligently fell. Applying the rationale of *Italia,* quoted above, the injury-producing equipment in the instant case was under the supervision and control of the seamen employed by defendant shipowner; the shipowner and its employees were the parties best situated to adopt preventive measures and thereby reduce the likelihood of injury. Under these circumstances it would be unreasonable and unfair to require Jarka to indemnify defendant shipowner.

This conclusion also has the merit of fairness. The shipowner's liability for damages is being reduced to the extent that the negligence of the plaintiff, Jarka's employee, contributed to the accident. See discussion in *McLaughlin,* 408 F.2d 1334 (2 Cir. 1969).

4. Plaintiff sustained an injury to his left ulnar nerve, which kept him off work from July 25, 1968, to the week of October 12, 1968, when he returned to work as a relief driver, which, with Jarka, was relatively light work. His union was on strike from December 20, 1968, to February 21, 1969. During 1969 he worked for a while as a relief driver, for some months as a ship foreman for another stevedoring company, making 50¢ an hour more than as a regular driver, and for a short while as a regular driver. He took a few weeks holiday during the year. In the fall he was elected a vice president of his local union, effective January 1, 1970. His injury does not interfere with his present work, and he makes more money than he did as a driver. The Court finds that his injury was painful, that it is still improving, and that he will probably be entirely free from any disability or discomfort from his injury in another year or so. The Court finds the testimony of defendants' medical witnesses more credible than that of plaintiff and his doctor,

---

5. The only authority to the contrary which the Court has found is *Maple's Case,* 1966 A.M.C. 2032 (S.D.Tex.1966), which has one of the two aspects of a "mule" case; it "lacks pride of ancestry", because it cites no authority on this point. It is too soon to tell whether it also "lacks hope of posterity".

who did not even test plaintiff's grip. The provable medical expenses were $705.20; the wages lost in 1968 due to the injury were about $3,000; in 1969 about $550. No loss of future wage earning capacity has been proved. For pain and suffering, present and future, and possible future inconvenience, $6,000 is the proper figure. The total of $10,255.20 should be reduced by one-third, making the judgment against defendant shipowner $6,836.80. Judgment will be entered in favor of Jarka on the third-party claim against it.